Philip Widener, or the appellate Philip Allen Kinzinger, may it please the court, opposing counsel, all persons assembled. Philip Kinzinger, a 15-year-old minor, had his life, his lower jaw, most of his face, his teeth, and his tongue destroyed when a weapon discharged that was loaded, chambered, and in battery. In battery, of course, means the bolts against the breech of the barrel. It was in a home where it had been stored in plain view in a freezer for several days. There was no gun safe in the home. Guns were stored throughout the home. There were no trigger-locked shoes, no cable locks. There was no protocol for checking a gun when it was picked up. There was no protocol of record to not even point the muzzle of a gun. That's something you don't intend to shoot. The first rule of gun safety. There were two rulings made that the U.S. District Court were erroneous. First of all, this case was brought in state court. It was removed to federal court on allegation of fraudulent rejoinder. The district court denied our motion to remand and basically held the claim was fraudulent. Fraudulent in the sense of suspicious, a sham, no possible claim. We plead on our complaint with allegations of what I just told you. That is that it's negligent for a homeowner to allow loaded weapons or any weapons into the home without these protocols. For instance, here in this courtroom, a cable lock is used. There are products cases now being fled and tried where it's a defective gun with the absence of a trigger lock. Do we have cable locks here? Well, not at this moment, but in the U.S. District Court, cable locks are used on weapons. I've tried gun cases in state court that are used on weapons. A cable lock, and I tried to get one introduced into evidence in this case, but I put a picture into the evidence. A cable lock keeps the gun out of battery. So even if there's a shell in the magazine, even if, quite frankly, even if there's a shell in the chamber, you can't fire the weapon. It's a simple $2.50 device. The U.S. District Court ruled that our claim was a sham. Under Alaska law, under a 12B6 motion, Alaska law says if there's any facts in the complaint sufficient to state a cause of action, you don't dismiss. Alaska summary judgment, for instance, in the Alakia case. We do understand the standards, and you've only got 10 minutes. All right. What is the case that you would make against the homeowner here? It wasn't his gun. The gun was owned by his son. There's no evidence that he was even aware of this gun, so I'm not quite sure. What case would you rely on for the proposition that a homeowner must protect visitors to their home from dangerous devices brought there by another visitor? 318 of the Restatement of Torts, the duty of a homeowner to have a safe premises for minors, the duty when you allow a minor on the premises to know that you're not allowing them in. He's not a minor. Pardon? You mean a child? Yes, my 15-year-old client that was to the shelter. I have a procedural question. Yes. You made allegations in your complaint, and the defendant relied in part on depositions from the other case. Right. And at points in your brief, you seem to be complaining about whether he was entitled to do that or whether you should have been able to have discovery or whether you should have been able to introduce evidence. And that's the piece of this that I'm interested in. Certainly. So if you could address both what happened and what you think should have happened. I'll be glad to do that. I'm glad you asked that question. There were two rulings here. They denied our motion to remand. Before you answer Judge Breslin's question. I'm trying to. Before you do that, I just want to make sure that you finish answering my question. Certainly. Was that your full answer? No. Restatement 315? No, it was not. There's a case cited, DSW v. Fairbanks-North Starborough, the Alaska law, on the existence of a duty. The district court judge here only went to the first factor on the existence of a duty and said there was no foreseeability because he relied on the straw man issue as to whether or not the homeowner knew of the gun. Now, that's actually a factual issue because the gun was in plain sight on the freezer for days. Getting past that is foreseeable. It's going to be an accident on the home when you have these lack of protocols. So to answer your Honor's question, our position is quite simple and I submit compelling. When you allow an instrument of death and destruction as a weapon to be stored in the home, even if it's going to be stored loaded, if it shouldn't be chambered and even if it's going to be stored chambered, then there has to be a disabling device such as a trigger lock or a cabling device, especially when they're stored at various places in the home. I mean, there's no protocol. I'm sorry. So if I understand you correctly, if I read the DSW case, it can be fairly read for the proposition that Alaskans, when they keep guns in their homes, must have trigger locks or cable locks or must own gun cabinets or gun safes. In other words, they must behave the way folks in California behave with their guns. Reasonable, man, standard. I'm not arguing with you here, but that's what I would get from DSW. Yes, the DSW case lists all the factors that Alaska courts look to for a duty. The judge below only looked at the first factor, said there was no foreseeability because of the allegation that the homeowner didn't know about this precise weapon as opposed to the other weapons. And that itself is a factual issue. But my position is, is that a reasonable person would have taken, and certainly it's a jury issue, taken precautions with protocols and disabling devices to ensure that this accident didn't happen. Well, even if it's a jury issue, what troubles me is that there was no discovery. Right. And I want to know, did you ask for a discovery? I did. And I'd like to respond to Your Honor's question, if I may. There were two rulings here. There was the motion to remand and the motion to dismiss. Throughout these pleadings, it's repeated the fact that we pointed out that we wanted discovery. The summary judgment, for instance, shouldn't be granted with the motion to dismiss without discovery. If you look at dockets 15, well, actually 15 is where we tried to get the cable lock in, but you look, 16 is our motion to remand. 21 is our reply. 29 is our motion for reconsideration, Your Honor, on the motion to remand. And docket 37, excuse me, docket 47 is our opposition to the motion to dismiss. I read this last night of this record because I was concerned you might ask me that question. And I wanted to make sure and refresh my memory that we'd asked and we'd objected to the lack of discovery. And we did. It's replete with it. I'm sorry, what would discovery have gotten you? I assume you'd gotten discovery and you'd gotten everything you hoped you would get. What would you have come up with? Well, first of all, well, one main thing is this. I want to ask the homeowner how he complained he didn't know about that gun when it was laying on the freezer for days and it's in his garage. And how often does he go into that garage? Because if he admits under oath that he goes back and forth through that garage, a jury is going to find that he knew about that gun. Did you depose him in the state case? I did not. I've got to explain, Your Honor, what happened in the state case. The state case was against the boy, actually a 19-year-old, but the gun handler. The father was never sued. There was a kind of a bad faith issue on an insurance policy, so they never contested liability. And they finally kicked in about $1.9 million because of the problem on the insurance policy. When the depositions were taken, there was no focus on the father's liability. Oh, so you did take the deposition. I didn't. No, it was another attorney. Okay. A deposition was taken of the father in that litigation, but because this issue was not in play in that case, no questions were asked along these lines. Very minimal questions about something about where were the guns in the house, things of that nature. But nobody were asking, for instance, what do you mean when you didn't know about the gun? How about it being in plain view in the garage? So there was just his testimony that I never saw it, I didn't know it was there. It's in the excerpts of the record. It's a one or two-liner, yeah, I didn't know about the gun. But he did know, Your Honor, about the other guns that his son had. He did know they were stored in the garage. Even from that naked record, there's no evidence of a proper protocol or gun laws or things of this nature. But in that case, the issue of the father's liability. I'm still not clear what it is that this further discovery would have gotten you. He has already said, I have not seen, I did not know about the gun. Okay, now you get your further discovery. What are the things that you hope to? What do you mean when you don't know about the gun? Do you go through that garage? That's a question. What I'm asking is, what do you think he's going to say? No, I lied. I didn't know about the gun. Is that what you're saying? You're trying to get him to contradict himself? Your Honor, I've had success in depositions and trials asking people questions like that. And they come through with the truth. So this discovery is basically what you're trying to do is use discovery to get the witness to recant. Not to recant. To show facts to a jury that the jury can make a finding that he actually knew. But, you know, I don't know about Alaska, but where I come from, we don't have juries in depositions. So the question is, what will discovery get you? You're complaining, I didn't get discovery. The question is, when you're done with this discovery that you, on our claim, you should have gotten, what do you now have as a result of that discovery? And this is my answer. First of all, with all due respect, Your Honor, I wasn't saying that we had a jury at a deposition. What I was saying is this. If I could have taken a deposition, I could have elicited facts to show that it's clearly a jury issue as to knowledge of that weapon. And under the Alaska law on jury issues, the modern space juries. That gives me no answer at all. I could have elicited facts. What I'm asking you is, what are those facts? Proximity to the freezer where the gun was displayed for days. He was in that garage at a relevant time. Yes. Right. I mean, all I have to, if he admits under oath that he was, that's a jury issue. I'm sorry. So the evidence you get is that he was actually in the garage when the gun was there? Right. And that's an issue, that's evidence you don't have now? No, because I've never been able to oppose him when his liability is at issue. Also, issues about details about why he didn't have a protocol for checking the gun. How would that help you? Let's say that he says, yes, I was in the garage. Didn't he say he didn't see the gun in the garage? No, he said he said he said he knew nothing about the gun. He said he didn't know his son had that shotgun. The son in the limited depositions testified that the shotgun was laying on the freezer. Okay. So now you have his testimony from discovery that he, yes, in fact, he was in the garage. What does that give you? Well, it's a jury issue as to whether he saw that gun laying on the freezer. And under Alaska law, that's sufficient to defeat summary judgment under a lackey act and under. Only if there's a duty. And I'm still so stuck of where the duty comes from. Because the lower court said he didn't go to the other issues on the duty because he just said there's no foreseeability, didn't know about the gun. But if you look at all the, and that actually was a red herring, Your Honor, because of this. He knew about the other guns in the house, that his son had the other guns, that they were stored in these various places. He knew they were stored without disabling devices. But that's apparently from the record. Certainly there's no evidence in the record that there were disabling devices. And the bottom line is this. I mean, the right to bear arms is an important right. We love it here in Alaska. But there's a responsibility and a duty with that. And you can't have a home where guns are stored throughout the home and there's no disabling devices. There's no protocol to even check a gun when you pick it up. The father testified in the limited deposition, his only rule, his main rule, was to unload the gun when it came into the garage. Nothing about a protocol about not pointing it at people. Nothing about a protocol about checking it when you pick it up. Nothing about checking to see if it was in battery. Nothing to check to see if it was in chain. The protocol points are kind of strange because you're dealing with an adult. It is his son and it's only recently an adult. But as I understand it, the case has to be considered as if I wandered into that house as an outside adult and took my gun and laid it on the freezer and stayed a couple of days. Isn't that the analogy? Again, Your Honor, with all due respect, no. Why? Let me explain why. Because, see, there's kind of a red herring here about this minor first to 19 issue. And we're not saying that there's vicarious liability because of a minor issue. But when you have a home and you allow someone to live in your home, there are rules of the home. And if you're going to allow that person to be in the home and have guns, which is what this record shows, then you have to set out rules when these are dangerous instrumentalities. And so it's not like someone unexpectedly wandered in with a gun. That father knew that his son had guns in that home. But isn't the answer to Judge Berzon's hypothetical that, under your theory, that it doesn't matter whether it's a relative, it could very well be an adult visitor who brings a gun into the homeowner's house and stays for several days? If the father knew of the practice of him bringing guns in, then there wouldn't be a difference. But what I'm saying here, this is not a random person off the street or an unknown. He knew of the practice of the boy having guns in the home. He knew of the practice of the guns being stored in the garage and throughout the home. That carries with it a duty to have an absolute protocol of disabling devices or at a minimum a protocol to not point a muzzle at someone and to... It is clear that Berzon says he didn't know it was loaded. It's not that he picked up what he knew to be a loaded gun. I mean, if he had picked up what he knew to be a loaded gun and it was his gun and he had left it loaded, then I don't see how there would be any causation because he could have loaded the gun. I mean, if he wanted to pick up a loaded gun, meant to pick up a loaded gun, then it doesn't make any difference if it's not the homeowner's guns, right? Well, treat every gun with respect to a loaded gun. It's a cardinal rule of gun safety. That's the first rule of gun safety. It wasn't enforced in this home. But never point a gun at anything you don't intend to do. But his son had known that he left a loaded gun. Right. Even if no one's opposed to it. He knew that. And he went and picked up the loaded gun to show it to his friend. Not to shoot the friend, but he just thought... Because I guess there's something in the record that says the way this happened was he tripped. I mean, it isn't... He's debunked it, actually, is what he did. He didn't mean for the gun to go off even if he knew it was loaded. But he says he did know it was loaded. But to respond to Your Honor, even if he would have known the gun was loaded, if the gun would have had a trigger lock or a cable lock on it, it would have been discharged. It would have been out of battery. And Judge Weisslein indicated that our supposed position was that people can't store loaded guns in their homes. That's not our position. If a loaded gun is stored in the home, it should be stored in a matter that is safe with a cable lock or a trigger lock. What does that matter? He meant to pick it up. I mean, if it were locked away but were loaded, he would have gone and unlocked it and picked it up. No, a cable lock, Your Honor, goes through the gun. If he meant to pick up a loaded gun and it was his gun, he would have picked up a loaded gun. No matter where it was. If it was locked away, if it was cable locked, no matter what it was, he would have picked up that loaded gun and taken it to see his friend. And it would not... I'm sorry, I didn't mean to speak over my problems. It would not have discharged if it had a cable lock on it. Because it would have been out of battery. It means the bolt would have been back. The gun would not have fired. It's impossible. So that's equivalent to not being loaded. Yes. But what I'm saying is that locking it up in a locked place wouldn't have made a difference if he had to pick up a loaded gun. Right. But there's a difference between locking it up in a gun safe or using a disabling mechanism such as a cable lock or a trigger lock. Or just having a protocol when you pick a gun up to make sure if it's loaded or not. Let me just make sure I understand. In order for you to prevail, we'd have to find something in Alaska law that says homeowners who have guns in their house in Alaska have the duty to have cable locks or trigger locks. And you have to have a rule to that effect that applies to all visitors who come in having guns. You walk through the door. House rule is you have to use a trigger lock. Over there on the rack you've got extra trigger locks or extra cable locks. And before you can step through the threshold, the rule is all guns must be subject to trigger lock or gun lock or whatever. No. And this is why. Tell me. That's one factor of the totality of the circumstances. If you look at the DSW criteria for all the factors, a reasonable person in this state who knows that there are guns in the house should have appropriate protocols. Perhaps these locks should take reasonable measures to protect against accidental discharges. Well, they wouldn't help you because as Judge Bresland points out, if you have a reasonable protocol that you treat all guns as loaded and you don't point them, people, it doesn't help you. The guy tips. If you have a protocol, for instance, and you pick a gun up, you look to see if it's loaded, that would help. And they didn't have that in this case. They didn't even have a protocol to check the gun unless you picked it up. On the motion that is dismissed, all of what you're discussing seems quite pertinent, but you might well lose. The question is, this was found to be frivolous with regard to the remand order. Right. So the question is, what is the standard of frivolousness? The question whether you have support in Alaska law or whether you have something in Alaska law that's squarely against you. And here's my answer. First of all, there's different. Is there an Alaska appellate case about property owners and guns? No. Not that I'm aware of. But my answer is this. First of all, it's a noble review by this Court. And then the standard for a remand on a frivolous joinder is it has to be a sham. And and under Alaska law, I think it's I can't pronounce the name of the case that's in my brief. There has to be no possibility of winning under Alaska law. And Alaska law, which I mentioned your honor, summary judgment is in the Myers case, for instance, even with DNA tests on maternity. They turned down summary judgment. Alaska law says you don't weigh the evidence. We have an opinion saying, you know, there's a requirement like this in Alaska for people to have protocols about how they handle guns in their homes and maybe have trigger locks and all that. I think they say, boy, those Californians came to Alaska. I have no idea what we do in Alaska. And this is my response, if I might, your honor. There's a case called Briano, which and I'm not sure if it's in the brief or not. I just shown it to opposing counsels. One twenty six feds second twelve ninety three. It's a decision out of California district court. But it says these issues of public policy should be decided by that instance, the California court. In this instance, the Alaska court. So what should have happened here on this public policy issue instead of the court saying that no legislature would pass this kind of law as it should have been a remand and let the Alaska courts make that decision under Alaska common law. That's Judge Timlin's decision. The other decision, which is cited in my brief, the Levine case for forty one feds up second one seventy seven says squarely that when there are factual issues, you don't find if there's factual issues necessary to decide for a plaintiff to lose. And it's not a frivolous case. And this report made factual findings on foreseeability, on knowledge, many factual findings. And he made those factual findings and we didn't get discovery. And then essentially granted summary judgment against this motion dismiss and we didn't get a discovery. This complaint is drafted will withstand any test. The Alaska courts put to it. And that's OK. I think we understand your position. Thank you. Good morning. My name is Dan Quinn. May it please the court. The issue in this case is under the standards for fraudulent joinder. In essence, whether the trial court correctly ruled that under Alaska law, Mr. Kensinger stated no viable cause of action against directly relevant Alaska. I'm not aware of a directly relevant case that addresses a homeowner's duty specifically with respect to. There are. Well, the issue here really is whether this federal court should divest itself of jurisdiction because there is a leg to stand on on this on this court case. I think probably. And it's interesting that Mr. Kensinger's attorney here says, what's the authority? Well, it's restated in Section 318. I think it'd be helpful to take a look. But the real inquiry here essentially is really manipulating federal jurisdiction. That's correct. Adding a defendant that they really have no intention of pursuing and have no chance of prevailing on. That's what we're trying to think. That's what is serious about this. That's really what we're trying to figure out. That's correct. That's exactly correct. And I would submit that a couple of things that answer to your question is, do they have a leg to stand on under Alaska law? Let me say, first of all, that there is not a single case in any jurisdiction that would allow this claim to prevail against a homeowner. The two cases that they rely on are from other jurisdictions. One is the Volpe case, and the other is the Irons v. Cole case, Connecticut and Rhode Island. Very similar cases. And in those cases, what you had is an adult child living in the home who was schizophrenic, who was delusional, who went out and shot somebody after speaking to people in their room that didn't exist. An entirely different kettle of fish than what we have here. And both of those cases spend a lot of time talking about foreseeability, dangers of allowing access to weapons, to people with serious, serious mental illness that was known to the homeowner. You don't have that here. Here you have a kid who's been hunting with his dad since a young age. You have a situation where the son testified, you know, I always, the first thing I do when I pick up a gun, always is I check to see if it's loaded or not. And in this case, I was negligent. I inadvertently didn't do that. But that was what my dad taught me. That's what I always did. That was my dad's first rule as he testified. You don't have a situation where this kid. Suppose that the father knew that there was a gun loaded gun sitting there in the garage. I don't think that would, I mean, I think the fact that he didn't know it has a bearing on foreseeability. But I don't really even think it's dispositive. I think if his dad had been aware that the son had a gun, you know, had a new gun in the house, you know, why would that make it foreseeable that this tragic accident would happen when this son had been handling guns since a young age, owned two other guns of his own, and had never had anything close to an accident like this. It didn't have any sort of dangerous predispositions. There's just no foreseeability. And that's what Judge Beislein ruled. And, you know, I challenge the plaintiff or challenge anyone to. Is that because it's his gun? I mean, suppose it was Mr. Kinsinger's, Ricky Kinsinger's gun that was sitting there, and I watched him pick up the gun. Well, I think in terms of analyzing foreseeability, I think it's a factor to consider. But I really would come down to even if it's, you know, even if it's one of the homeowner's guns. If what he was doing is showing this gun to his friend, thinking that it was unloaded, when he had been caught by his dad and, as far as his dad was concerned, had taken the lesson that you don't have loaded guns in your house. And on this particular day, it's an act of negligence that was not foreseeable. That's really what it was. Did the plaintiff ask for discovery? Yes, I believe that is accurate. And in general, I mean, let's put aside the question of whether there was any discovery to be had here, but in general, is discovery available either on the remand motion or on a motion to dismiss that comes up under the circumstances? I do not believe it is. Well, how can that be? I tell you, I looked far and wide in Ninth Circuit and also in other circuits. But you were relying on evidence from outside the record, and your position is that you could do that, but he couldn't. Well, interestingly enough, I did look at the Morris v. Princess Cruz line. In that case, I believe the plaintiff did submit an affidavit, and that affidavit was considered. Whatever may be the case in a motion to remand, when you got to the dismissal, that was essentially a summary judgment motion, and it had to be treated as an ordinary summary judgment motion. Why not? Because I think as a matter of law, if there is a decision on a motion to remand. But if it relies on external evidence, I mean, how can it be that you're now getting dismissed out of a case on external evidence and you have no right to discovery? Why should that be? Because it has to follow that if there is a ruling that there is no viable cause of action. Well, then it has to follow that there should be discovery in the first place, but if there's no discovery in the first place, then there has to be discovery in the second place. Otherwise, you're just rewriting the federal rules. I don't believe that's accurate because, in fact, there is the Crusoe case. I believe it's the Crusoe case. It specifically said that once there's a determination that there's no viable cause of action, dismissal follows. But you're building into other factors. Reliance on external evidence and no discovery with regard to that external evidence. And you're saying that's okay. As I said, I think it is okay. Again, because the procedure with regard to fraudulent enjoinder is, I think as the cases say, it's a little bit of a hybrid situation. It's a little bit like a 12 v. 6, but evidence is allowed. And what the Ninth Circuit says is that it's the party opposing remand that's allowed to present evidence. That's pretty clear. Maybe you can make a jurisdictional decision. I don't see how you can make a merits decision. But how can you make a jurisdictional? Under the federal rules. I guess my point is, isn't a jurisdictional decision necessarily a merits decision? You have to have discovery as to one or the other. It has to be one way or the other. Otherwise, you're just rewriting the federal rules. Let me go back. If I believe that. All right. Is there any discovery in here that would have been relevant? You know, other than I suppose what Mr. Widener is saying is maybe these people are all lying in what they submitted in their deposition. Well, that's certainly possible. They weren't asking these questions for these reasons at that point. But I think what is certainly a relevant point is, number one, the testimony that was submitted that we're relying on is deposition testimony that was noticed and taken by this exact plaintiff with regard to this exact accident. But not in a circumstance in which it was relevant. Maybe not in a circumstance, but certainly in a circumstance where, particularly if these folks are contemplating a lawsuit down the road against Mr. Ricky Brennigan, don't they have some obligation to ascertain facts? Aren't there Rule 11 issues? In your ultimate position, as I understand it, is that particular fact doesn't matter. I think that is my position. And let me make one final point on that. Is there any other fact that might matter that might have been discovered? I just don't see, you know, again, the fact that I guess, I mean, to me, what happened here is pretty straightforward. I don't think there's any dispute. I wanted to talk briefly, if I could, about Restatement 318 because I think there's a couple points of significance. First of all, and that seems to be the, you know, where they're saying the Alaska court may go and find liability. First of all, there is a requirement under 318 that the actor, that is the homeowner, be present when this happened. There is no dispute that Mr. Brennigan, Ricky Brennigan, the dad, was at work when this happened. He's not there. So right, you know, on step one, 318 just doesn't apply. Secondly, and I think this ties in very nicely to an Alaska decision, there's two conditions that impose liability on a homeowner or a chattel owner under Restatement 318. And what's significant is that these are the A and B of 318. What's significant is they are identical word for word to A and B under Section 316. That's the parent's duty to control the child. The second one is that this actor or the parent knows or should know of the necessity and opportunity for exercising such control. Now, in the Ginsmore-Poff case, the Alaska Supreme Court talked at great length about that requirement. And what they said was, here's what it means. It means that the parent must know that there is some real imminent danger that your child is going to do something dangerous. You need to know about that, and you need to know at that time of have the opportunity to do something about it, the opportunity to exercise control. It's not enough that in the Ginsmore-Poff case, this child had shot a kid some months earlier. This kid had, you know, a number of run-ins in the law. This kid was kind of a serious delinquent. That's not enough. You need to know immediately. Isn't the focus here, or perhaps I'm wrong, not on controlling the person, but on controlling the gun in the house? In other words, that this is your house, and as to what's in the house, if it's just lying around the house, you've got control over that. And I think the response that you made was the point that I wanted to make, and that is, if you look at it, the actual allegation in Kensington's complaint says, first of all, that you didn't supervise your son. They seem to have kind of abandoned that argument. But secondly, that negligent with regard to locking the gun away, I think, is the terminology in the complaint. And the point you made, I think, is entirely correct. Locking this gun away is a red herring for reasons of proximate cause. This young man, Eric Brannigan, owned this gun. He's got a right to have it. If there's a protocol in the house of locking these guns in a closet, he's got every right to unlock the gun, to get it, and show it to his friend. The negligence, what the negligence here in this case that caused the accident was that, you know, I thought I had unloaded it, but I didn't. And clearly that's negligence. That's negligence on the part of his son. It's clearly not something that the dad knew about or should have known about because his understanding was, and it's confirmed by the testimony, is that that's the rule in the house. You don't always unload a gun when you're done with it. And the kid acknowledged that, and he acknowledged, I don't know why, but for some reason in this case, I didn't follow that rule. I knew the rule. I understood the rule. It was my dad's rule. It was my rule, and I was negligent. And so I think under these facts, there's just no jurisdiction anywhere in Alaska or any state that's going to fine you. Okay, Mr. Cliff. Thank you. Thank you. Okay, I'm sorry. You must stand for a minute. You have more than you share. If you want to take a minute. We have minutes up. There's no manipulation of the system. Alaska is an apportionment of false state. I don't want an empty chair here. I've tried these gun cases before in products cases. The first thing the pawn is going to do is try and point to the father, and I want him in the courtroom as a joint defendant. In terms of the jurisdictional issue, Your Honor, the cases don't say that you can dismiss without discovery unless it's just a clear jurisdictional issue such as statute of limitations, something of that nature. There will be no collateral stopper here because the issues weren't the same in the discovery, and the discovery shouldn't be against us. 318 focuses on the right to control, and you have to be present to control, not at the event, but the right to control. Thank you. Okay, thank you. You can stand. You have a chance in a minute. Hard versus progressive cavalry.
judges: Kozinski, Berzon, Tallman